IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:12-CT-3147-FL

| | |
|---|---|
| JAMES GREGORY FREEMAN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | ORDER |
| ) | |
| BOYD BENNETT, CHIEF CLERK OF ) | |
| RECORDS, DEWEY O'KELLEY, III, ) | |
| UNIT MANAGERS, and CASE ) | |
| MANAGERS, ) | |
| ) | |
| Defendants. ) | |

This matter comes before the court on the respective motions to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) (DE 17) filed by defendants Boyd Bennett ("Bennett") and Dewey O'Kelley, III ("O'Kelley") (DE 20). Plaintiff responded to both motions. The matter also is before the court on plaintiff's failure to obtain service on the defendants he identified as the Chief Clerk of Records, unit managers, and case managers. In this posture, the issues raised are ripe for adjudication. For the following reasons, the court grants defendants' respective motions, and dismisses without prejudice plaintiff's action against Chief Clerk of Records, unit managers, and case managers.

**BACKGROUND**

On February 25, 1994, plaintiff, in the Pitt County Superior Court, pleaded guilty to one count of second degree kidnaping in violation of N.C. Gen. Stat. § 14-39 and two counts of common law robbery in violation of N.C. Gen. Stat. § 14-87.1. State v. Freeman, 164 N.C. App. 412, 595 S.E.2d 815, at *1 (May 18, 2004). The trial court then sentenced plaintiff to consecutive terms of

ten (10) years, ten (10) years, and thirty (30) years imprisonment. Id. Plaintiff's convictions were affirmed on appeal, and the North Carolina Supreme Court denied plaintiff's petition for a writ of certiorari. See id.; State v. Freeman, 358 N.C. 735, 601 S.E.2d 870 (2004).

On June 17, 2009, plaintiff filed a motion for appropriate relief ("MAR") in the Pitt County Superior Court challenging his sentence. State v. Freeman, No.s 93CR28301, 94CR1047 (Pitt Cty. Super. Ct. Sept. 15, 2009).[1] On September 15, 2009, the MAR court entered an order, and stated as follows:

    3.    In 1993 the General Assembly ratified the Structured Sentencing Act, Article 81B of the Criminal Procedure Act, to be effective January 1, 1995.

    4.    Under the Structured Sentencing Act, N.C.G.S. § 14-87.1, Common Law Robbery, was elevated from a Class H felony to a Class G felony. N.C.G.S. § 14-39, Second Degree Kidnaping, remains a Class E felony.

    5.    The statutory maximum punishment for Defendant's convictions under the Structured Sentencing Act would be determined by a calculation of Defendant's prior record level.

    6.    The defendant avers and the State agrees that his criminal history would place Defendant in Prior Record Level II under the current law.

    7.    The longest sentence that a Class G, Level II felon may receive in the aggravated range under Structured Sentencing is a minimum term of 19 months (1 year 7 months) with a corresponding maximum term of 23 months (1 year 11 months). The longest sentence that a Class E, Level II felon may receive in the aggravated range under current law is a

---

[1] Bennett attached a copy of this order to his motion to dismiss as Exhibit A. The court may take judicial notice of matters of public record without converting a Rule 12(b)(6) motion into a motion for summary judgment. See Sec'y of State for Defence v. Trimble Navigation Ltd., 484 F.3d 700, 705 (4th Cir. 2007) (citing Hall v. Virginia, 385 F.3d 421, 424 (4th Cir. 2004)).

> > minimum term of 36 months (3 years) with a corresponding maximum term of 53 months (4 years 5 months). The maximum possible sentence for one Class E and two Class G felonies, at Level II, consecutively, is 74-99 months (6 years 2 months-8 years 3 months).
>
> 8. The longest sentence that a Class G, Level VI felon may receive in the aggravated range under current law is a minimum term of 36 months (3 years) with a corresponding maximum term of 44 months (3 years 8 months). The longest sentence that a Class E, Level VI felon may receive in the aggravated range is 74 months (6 years 2 months) with a corresponding maximum term of 98 months (8 years 2 months). The maximum possible sentence for one Class E and two Class G felonies, at the highest record level, Level VI, consecutively, is 146-186 months (12 years 2 months-15 years 6 months).
>
> 9. As of September 14, 2009 Defendant has been in custody for these crimes for 15 years, 8 months, 12 days.
>
> Based upon the foregoing findings of fact, the Court concludes as a matter of law:
>
> > There have been significant changes in the sentencing laws of North Carolina. Based upon North Carolina's current assessment of the appropriate sentence for violations of N.C.G.S. § 14-87.1 and N.C.G.S. § 14-39, Defendant's continued incarceration violates the Eighth Amendment of the Constitution of the United States and Article 1, Sec. 27 of the North Carolina Constitution. The sentences imposed on 25 February 1994 are invalid as a matter of law. Retroactive application of Article 81 B of the Criminal Procedure Act is required.

Id.

In accordance with the foregoing, the trial court granted plaintiff's MAR, vacated plaintiff's prior criminal judgments, and re-sentenced plaintiff to a term of six years imprisonment. Id. The MAR court credited plaintiff's sentence for fifteen (15) years, eight months, and twelve (12) days

3

of confinement, and directed that plaintiff be released immediately. Id. Plaintiff was released from incarceration.

On July 24, 2012, plaintiff filed this action pursuant to 42 U.S.C. § 1983, against North Carolina Director of Prisons Bennett, the North Carolina Chief Clerk of Records, the Pitt County Public Defender O'Kelley, the North Carolina Department of Public Safety ("DPS") unit managers, and the DPS case managers. Plaintiff made the following allegations:

> According to facts and findings on my behalf the [MAR] I filed on June 17, 2009 was granted by the Judge Russell Duke Jr. Sept. 15, 2009. Due to the un-professional conduct my Attorney Dewey O'Kelley III, the Director of North Carolina Prisons Boyd Bennett, the North Carolina Department of Corrections Chief Clerk of Records, North Carolina Department of Corrections Unit Managers, and North Carolina Department of Corrections Case Managers I remained in prison 10 years longer than I should have. If the above mentioned would have recalculated my sentences like they are required to do when they clearly knew that my sentences were effected by the Structured Sentencing Act and retroactive did indeed apply in my case my 8th Amendments wouldn't have been violated, and I would have been released 10 years prior to being released in Sept 2009.

Compl. p. 4. As relief, plaintiff requests monetary damages.

Bennett and O'Kelley subsequently filed separate motions to dismiss, arguing that plaintiff failed to state a claim. Both motions were fully briefed.

## DISCUSSION

A.  Motions to Dismiss

   1.  Standard of Review

A motion to dismiss under Rule 12(b)(6) determines only whether a claim is stated; "it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Republican Party v. Martin, 980 F.2d 943, 952 (4th Cir. 1992). A claim is stated if the complaint

4

contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " Ashcroft v. Iqbal, 556 U.S. 662, 677 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). In evaluating whether a claim is stated, "[the] court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff," but does not consider "legal conclusions, elements of a cause of action, . . . bare assertions devoid of further factual enhancement[,] . . . unwarranted inferences, unreasonable conclusions, or arguments." Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009) (citations omitted). In other words, this plausibility standard requires a plaintiff to articulate facts, that, when accepted as true, demonstrate that the plaintiff has stated a claim that makes it plausible he is entitled to relief. Francis v. Giacomelli, 588 F.3d 186, 193 (4th Cir. 2009) (quotations omitted).

  2. Analysis

    a. O'Kelley

The court first addresses plaintiff's claims against O'Kelley, who served as plaintiff's public defender in plaintiff's state criminal proceedings. The party charged with a constitutional deprivation must be a state actor. Debauche v. Trani, 191 F.3d 499, 506-507 (4th Cir. 1999). Defense attorneys do not act under color of state law and, therefore, are not amendable to suit under § 1983, whether privately retained, Deas v. Potts, 547 F.2d 800 (4th Cir. 1976), appointed by the state, Hall v. Quillen, 631 F.2d 1154, 1155-56 (4th Cir. 1980), or employed as public defenders, Polk County v. Dodson, 454 U.S. 312, 325 (1981). Thus, O'Kelley is not a state actor and is not liable for his actions as plaintiff's criminal defense attorney.

5

b.  Bennett

The court now turns to plaintiff's claims against Bennett.  Bennett asserts the defense of qualified immunity.  Government officials are entitled to qualified immunity from civil damages so long as "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  In other words, a government official is entitled to qualified immunity when (1) the plaintiff has not demonstrated a violation of a constitutional right, or (2) the court concludes that the right at issue was not clearly established at the time of the official's alleged misconduct.  Pearson v. Callahan, 555 U.S. 223, 236 (2009).

The court first determines whether Bennett violated plaintiff's Eighth Amendment rights.  In order to establish a claim pursuant to the Eighth Amendment to the United States Constitution, a plaintiff must prove "(1) that the deprivation of a basic human need was objectively serious, and (2) that subjectively the officials acted with a sufficiently culpable state of mind."  De'lonta v. Angelone, 330 F.3d 630, 634 (4th Cir. 2003) (alterations and quotations omitted).

The court, in this case, focuses on the subjective prong of the Eighth Amendment test- whether Bennett acted with deliberate indifference.  To establish the subjective prong, a plaintiff must prove "that a prison official actually [knew] of and disregard[ed] an objectively serious condition, medical need, or risk of harm."  Id.  This deliberate indifference standard is not satisfied by "a showing of mere negligence."  Grayson v. Peed, 195 F.3d 692, 695 (4th Cir. 1999).

In support of his claim, plaintiff asserts that Bennett had a duty to correct plaintiff's sentence when the Structured Sentencing Act became effective.  North Carolina statutes, however, vest the state courts, and not the Director of Prisons, with the ability to impose and modify state criminal

6

sentences.  See N.C. Gen. Stat. § 15A-1352(b) ("A person sentenced to imprisonment for a felony . . . shall be committed for the term designated by the court to the custody of the Division of Adult Correction of the Department of Public Safety.")  Accordingly, Bennett did not have a duty, pursuant to North Carolina law, to modify or correct plaintiff's sentence.  Rather, that discretion was left to the sentencing court.  Cf., Lindsay v. Conover, No. 12-3167-MLB, 2013 WL 308886, at * 4 (D. Kan. Jan. 25, 2013); Callaway v. Werholtz, No. 12-2527-EFM, 2013 WL 2297139, at *4 (D. Kan. May 24, 2013).  Based upon the foregoing, plaintiff has not established that Bennett violated his constitutional rights.

Even if plaintiff could establish a constitutional violation, which this court maintains that he cannot, plaintiff still would not be entitled to relief because his alleged right to the recalculation of his sentence was not clearly established at the time of the alleged violation.  Specifically, Article 81B of the Structured Sentencing Act provides that the Act only applies to criminal offenses "that occur[red] on or after October 1, 1994."  N.C. Gen. Stat. § 15A-1340.10 (2011).  Plaintiff's offenses, and his sentencing, occurred prior to the Structured Sentencing Act's effective date.  Accordingly, the retroactive application of the Structured Sentencing Act was not clearly established prior to the MAR court's September 15, 2009, order directing that the Structure Sentencing Act be retroactively applicable and that plaintiff be released from imprisonment.  State v. Freeman, No.s 93CR28301, 94CR1047, p. 2 (Pitt Cty. Super. Ct. Sept. 15, 2009).

Based upon the foregoing, the court finds that plaintiff has not shown that Bennett's actions were objectively unreasonable in light of clearly established law. On the contrary, the evidence shows that plaintiff was held pursuant to a valid North Carolina State court judgment until the MAR court entered an order, on September 15, 2009, vacating his judgment and ordering his release.

7

Plaintiff does not allege, and there is no indication, that he was held beyond the date the MAR court ordered his release. Accordingly, Bennett did not act in a manner which was objectively unreasonable, and he is entitled to qualified immunity from suit.

B.  Failure to Obtain Service

Plaintiff failed to obtain service upon the defendants he identified as Chief Clerk of Records, unit managers, and case managers within the one hundred twenty (120) day time period provided by Federal Rule of Civil Procedure 4(m). On July 19, 2013, the court entered an order directing plaintiff to show cause as to why these defendants should not be dismissed without prejudice pursuant to Rule 4(m).[2]

Proper service of process (or waiver of service under Fed.R.Civ.P. 4(d)) is necessary for the court to exercise personal jurisdiction over a defendant. See Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc., 526 U.S. 344, 350 (1999). A plaintiff bears the burden of showing that service of process complies with the requirements set forth in Rule 4 of the Federal Rules of Civil Procedure. Elkins v. Broome, 213 F.R.D. 273, 275 (M.D.N.C. 2003). The Fourth Circuit has counseled:

> When the process gives the defendant actual notice of the pendency of the action, the rules, in general, are entitled to a liberal construction. When there is actual notice, every technical violation of the rule or failure of strict compliance may not invalidate the service of process. But the rules are there to be followed, and plain requirements for the means of effecting service of process may not be ignored.

Armco, Inc., v. Penrod–Stauffer Bldg. Sys., Inc., 733 F.2d 1087, 1089 (4th Cir.1984). Under Rule 4(m), if service of the summons and complaint is not made upon a defendant within one hundred

---

[2] The court's July 19, 2013, order details the efforts the court has made to assist plaintiff with obtaining service on these defendants.

8

twenty (120) days after the filing of the complaint, the court must dismiss the action without prejudice as to that defendant or direct that service be effected within a specified time, unless the plaintiff can show good cause. Fed.R.Civ.P. 4(m). "Good cause requires 'reasonable and diligent efforts to effect service' within the 120–day limit." United States v. Sea Bay Dev. Corp., No. 2:06–CV–624, 2007 WL 1378544, at *4 (E.D.Va. May 8, 2007) (quoting Quann v. Whitegate–Edgewater, 112 F.R.D. 649, 661 (D.Md.1986)).

Here, in response to the court's order to show cause, plaintiff states that he has been unable to identify the defendants at issue, but that he has filed a Freedom of Information Act request to obtain their proper names and addresses. However, the Freedom of Information Act, 5 U.S.C. § 552, does not apply to state agencies such as DPS. See Banks v. SC, No. 9:10-785-CMC-BM, 2010 WL 2365352, *6 (D.S.C. May 6, 2010); Grand Central Partnership, Inc. v. Cuomo, 166 F.3d 473, 484 (2nd Cir. 1999); Johnson v. McDonald, No. 12-10908-DPW, 2012 WL 6738258, at *1 (D. Mass. Dec. 27, 2012). Accordingly, the court finds that plaintiff has not met his burden of establishing good cause for his failure to obtain service on Chief Clerk of Records, unit managers, and case managers within the time provided by Rule 4(m). Based upon the foregoing, plaintiff's claim against Chief Clerk of Records, unit managers, and case managers is dismissed without prejudice.

## CONCLUSION

Based upon the foregoing, defendants' respective motions to dismiss (DE 17, 20) are GRANTED. Additionally, the court DISMISSES without prejudice, pursuant to Rule 4(m),

9

plaintiff's action against the Chief Clerk of Records, unit managers, and case managers. The Clerk of Court is DIRECTED to close this case.

      SO ORDERED, this the 20th day of August, 2013.

                                      LOUISE W. FLANAGAN
                                      United States District Judge